UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: Richard Blackburn and Victoria Blackburn, <br><br>Debtor(s). | Bankruptcy No. 07 B 05905 <br> Adversary No. 07 A 00796 <br> Chapter 13 <br> Judge Manuel Barbosa |
| Marco J. Muscarello, individually and Marco J. Muscarello, derivatively on behalf of Eldercare Risk Management, Inc., <br><br>Plaintiff(s), <br> v. <br> Richard Blackburn and Victoria Blackburn, <br><br>Defendant(s). | |

## MEMORANDUM OPINION

This matter comes before the Court on the motion to alter or amend the Court's June 11, 2009 judgment filed by debtors Richard Blackburn and Victoria Blackburn ("Debtors"), pursuant to Federal Rules of Bankruptcy Procedure 9023 and 7052 as well as Federal Rule of Civil Procedure 59(e), on June 19, 2009. For the reasons set forth herein, the Court grants in part and denies in part Debtors' motion to alter or amend. upon reconsideration of the Court's June 11, 2009 order and memorandum, the Court sustains Plaintiffs' objections to discharge under § 523(a)(6) in Count IV, and overrules Plaintiffs' objections to discharge under § 523(a)(6) in Count I. Plaintiffs' compensatory damages remain $385,638.04. Debtors' request to reconsider the liability of Victoria Blackburn is denied.

In addition, the Court's June 11, 2009 order granting administrative expense claim priority to Debtors' counsel's and valuation expert's applications for compensation shall be vacated. Debtors' counsel's and valuation expert's request for administrative priority on their

1 of 12

individual applications for compensation requires the requisite notice and hearing, pursuant to 11 U.S.C. § 503(b)(2). Accordingly, the Court will notice the parties-in-interest and set both professional fee applications for hearing on September 18, 2009.

## JURISDICTION AND PROCEDURE

The Court has jurisdiction to decide these matters pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. They are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(J).

## FACTS AND BACKGROUND

The following facts are taken from plaintiffs' Marco J. Muscarello, individually and Marco J. Muscarello, derivatively on behalf of Eldercare Risk Management, Inc. ("ECRM"), adversary complaint and from all public records and proceedings to which the parties refer. Many of the facts alleged in the complaint, which were admitted in the answer, are uncontested. The procedural and factual history was outlined in the Court's previous memorandum, dated June 11, 2009.

Debtors Richard Blackburn and Victoria Blackburn ("Debtors") filed a voluntary Chapter 13 bankruptcy petition on April 3, 2007. The meeting of creditors, pursuant to 11 U.S.C. § 341, was held on May 2, 2007 and objections to discharge were due by July 2, 2007, which was subsequently extended to August 17, 2007 by the Court's order. Plaintiffs served subpoenas to third-parties, accountants Charles J. Motl & Associates and attorney Thomas Young, as well as LegalZoom.com, Inc. for examination and documents, pursuant to Bankruptcy Rule 2004, and, in orders dated May 24, 2007, the Court granted Plaintiff's request for Rule 2004 discovery.

On August 14, 2007, Plaintiffs filed adversary complaint number 07-A-00796 to object to Debtors' discharge under five counts, pursuant to 11 U.S.C. §§ 523(a)(4), (a)(6). In Count I, Muscarello, acting derivatively on behalf of ECRM, sought recovery of a non-dischargeable

judgment against Debtors, pursuant to section 523(a)(6), for willful and malicious injury to property. In Count II, Muscarello, acting derivatively on behalf of ECRM, sought recovery of a non-dischargeable judgment against Debtors, pursuant to section 523(a)(4), for fraud or defalcation while acting in a fiduciary capacity. In Count III, Muscarello, acting derivatively on behalf of ECRM, sought recovery of a non-dischargeable judgment against Debtors, pursuant to section 523(a)(4) for larceny. In Count IV, Muscarello, acting individually, sought recovery of a nondischargeable judgment against Debtors, pursuant to section 523(a)(6), for willful and malicious injury to property. In Count V, Muscarello, acting individually, sought recovery of a nondischargeable judgment against Debtors, pursuant to section 523(a)(4), for fraud and defalcation while acting in a fiduciary capacity. Debtors filed an answer on October 5, 2007.

Debtors' modified Chapter 13 plan, filed September 6, 2007, was confirmed on September 10, 2007 and provided 100% payments to unsecured creditors over sixty (60) months. The order dated September 10, 2007 that confirmed Debtors' plan was vacated on September 20, 2007.

Regarding Plaintiffs' § 523 adversary complaint, the Court conducted a trial on March 10, 11, 12 and 16, 2009. On May 11, 2009, Debtors' attorneys, Myler, Ruddy & McTavish, and Debtors' valuation expert, James D. Keith, sought compensation for post-petition services in their representation of Debtors in their adversary trial as well as for priority cost of administrative claim, pursuant to 11 U.S.C. §§ 330, 503, 507. Debtors subsequently filed a motion to voluntary convert to Chapter 7 on May 13, 2009.

In the June 11, 2009 order and memorandum, the Court sustained Plaintiffs' objections to discharge under § 523(a)(6) in Counts I and IV, and overruled Plaintiffs' objections to discharge under § 523(a)(4) in Counts II, III and V. Under the "Ten Percent Agreement," Plaintiffs were entitled to $300,453.04 from ECRM. Plaintiffs were also entitled to the fair market value of

Muscarello's 50% ownership interest in ECRM as of December 31, 2006 which equaled $85,185. Plaintiffs' compensatory damages were $385,638.04. Plaintiffs' request for punitive damages was denied. In addition, the compensation for post-petition services in representation of Debtors in their adversary trial from Debtors' attorneys and valuation expert was afforded a priority Chapter 7 administrative claim, pursuant to 11 U.S.C. §§ 503(b)(2), 507(a)(2), 726(a)(1), but Debtors' attorneys and valuation expert are not entitled to immediate payment of their administrative claim, and, instead, shall be paid by the Chapter 7 trustee, pursuant to 11 U.S.C. § 726(a)(1).

On June 19, 2009, Debtors filed a motion to alter or amend the Court's June 11, 2009 judgment, pursuant to Federal Rules of Bankruptcy Procedure 9023 and 7052 as well as Federal Rule of Civil Procedure 59(e). On July 24, 2009, Plaintiffs filed a response.

On July 25, 2009, the Chapter 7 trustee filed a no asset report.

## DISCUSSION

Technically, a "motion for reconsideration" does not exist under either the Federal Rules of Bankruptcy Procedure or the Federal Rules of Civil Procedure. The Seventh Circuit, however, has indicated that Rule 59(e) governs such a motion, which should properly be termed a "Motion to Alter or Amend Judgment." Talano v. Nw. Med. Faculty Found., 273 F.3d 757, 760 n.1 (7th Cir. 2001). Pursuant to the Federal Rule of Bankruptcy Procedure 9023, Federal Rule of Civil Procedure 59(e) applies in cases under the Bankruptcy Code. Fed. R. Bankr. P. 9023.

> Rule 59(e) allows a party to direct the district court's attention to newly discovered material evidence or a manifest error of law or fact, and enables the court to correct its own errors and thus avoid the unnecessary appellate procedures. The rule does not provide a vehicle for a party to undo its own procedural failures, and it certainly does not allow a party to introduce new evidence or advance arguments that could and should have been presented to the district court prior to the judgment.

Moro v. Shell Oil Co., 91 F.3d 872, 876 (7th Cir. 1996) (citations omitted).

The main purpose of a discharge in bankruptcy is to give a debtor a fresh start. See Vill. of San Jose v. McWilliams, 284 F.3d 785, 790 (7th Cir. 2002). The party that seeks to establish an exception to the discharge of a debt bears the burden of proof. Goldberg Secs., Inc. v. Scarlata (In re Scarlata), 979 F.2d 521, 524 (7th Cir. 1992); Banner Oil Co. v. Bryson (In re Bryson), 187 B.R. 939, 957 (Bankr. N.D. Ill. 1995). The United States Supreme Court has held that the burden of proof required to establish an exception to discharge is a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 291 (1991); see also In re McFarland, 84 F.3d 943, 946 (7th Cir. 1996); In re Thirtyacre, 36 F.3d 697, 700 (7th Cir. 1994). Exceptions to discharge are to be construed strictly against a creditor and liberally in favor of a debtor. In re Morris, 223 F.3d 548, 552 (7th Cir. 2000); Kolodziej v. Reines (In re Reines), 142 F.3d 970, 972-73 (7th Cir. 1998); In re Zarzynski, 771 F.2d 304, 306 (7th Cir. 1985). "The statute is narrowly construed so as not to undermine the Code's purpose of giving the honest but unfortunate debtor a fresh start." Park Nat'l Bank & Trust of Chi. v. Paul (In re Paul), 266 B.R. 686, 693 (Bankr. N.D. Ill. 2001). Section 523 of the Bankruptcy Code enumerates specific, limited exceptions to the dischargeability of debts.

Section 523(a)(6) provides as follows:

> (a) A discharge under section 727 . . . does not discharge an individual debtor from any debt–
> . . . .
> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity[.]

11 U.S.C. § 523(a)(6).

Debtors first request that the Court reconsider its ruling under 11 U.S.C. § 523(a)(6) for $300,453.04 in damages from the "Ten Percent Agreement." In an order dated June 11, 2009, pursuant to 11 U.S.C. § 523(a)(6), the Court entered judgment in favor of Muscarello and against

Debtors on Counts I and IV of the adversary complaint in the amount of $385,638.04, including $300,453.04 from the "Ten Percent Agreement." Count I was brought derivatively on behalf of ECRM, while Count IV was brought individually by Muscarello. The "Ten Percent Agreement" allocation in the damages is not recoverable in Count I, as part of the derivative claim, because ECRM cannot owe money to itself. Regarding Count IV, pursuant to 11 U.S.C. § 523(a)(6), the Court finds, by a preponderance of the evidence, that Debtors' actions in dissolving ECRM, forming Beacon and transferring ECRM's business to Beacon was (1) a wrongful act, (2) done intentionally, (3) which caused injury to Muscarello, and (4) was done without just cause and excuse. In re Burke, 398 B.R. 608, 625 (Bankr. N.D. Ill. 2008).

Debtors engaged in conduct that qualifies as willful and malicious injury to property. Kawaauhau v. Geiger, 523 U.S. 57, 61 (1998); In re Burke, 398 B.R. at 625. By unilaterally closing ECRM and transferring ECRM's business to Beacon, Debtors enriched themselves at the expense of Muscarello and made it impossible for ECRM to pay the debt that it owed Muscarello under the "Ten Percent Agreement." Therefore, without any newly discovered material evidence, the Court finds that there was no manifest error of law or facts regarding the Court's June 11, 2009 judgment in favor of Muscarello and against Debtors on Count IV of the adversary complaint in the amount of $385,638.04, including $300,453.04 from the "Ten Percent Agreement."

Debtors next request that the Court reconsider the liability of debtor Victoria Blackburn. Victoria Blackburn was employed by ECRM from January 2002 and until December 31, 2006. (Victoria Test., Tr. 3/12/09, 134-35.) When Beacon was formed in January 2007, Victoria, as a Beacon officer and 50% Beacon owner, worked at Beacon until October 2007. (Victoria Test., Tr. 3/12/09, 136, 142.) By December 11, 2006, Richard Blackburn told ECRM clients that he was going to close ECRM, open Beacon and continue to service ECRM's business clients

through Beacon. (Victoria Test., Tr. 3/12/09, 143.) At the time, Victoria was aware that ECRM owed money to Muscarello and knew the general details regarding the "Ten Percent Agreement." (Victoria Test., Tr. 3/12/09, 138-39.) Moreover, Victoria typed notifications to ECRM's clients indicating that ECRM was closing and that their business was transferring to Beacon. (Victoria Test., Tr. 3/12/09, 140-42.) On December 14, 2006, a board of directors meeting for ECRM took place with Victoria in attendance, but Muscarello, who was not informed, did not attend and, more importantly, Victoria made no attempts to contact Muscarello to either inform him about ECRM's board of directors' meeting, ECRM's closing, or Beacon's formation. (Victoria Test., Tr. 3/12/09, 140.) As of December 14, 2006, Victoria testified that she had made a determination that Beacon was going to be a new business and Muscarello was not going to be a part of it. (Victoria Test., Tr. 3/12/09, 143.) Thus, Victoria and Richard Blackburn intentionally diverted the majority of ECRM's business to Beacon, since Beacon was not conditioned under the "Ten Percent Agreement." (Opinion, June 11, 2009, 19; Victoria Test., Tr. 3/12/09, 143.) Regarding ECRM's dissolution, Victoria and Richard Blackburn submitted a materially false Articles of Dissolution to the Illinois Secretary of State that indicated that the shareholders had approved the dissolutions, despite the fact that the majority of the shareholders had not approved this action. (Opinion, June 11, 2009, 10, 19; Pl.'s Ex. 46).

Thus, without any newly discovered material evidence, there is ample support for the proposition that there was no manifest error of law or facts regarding the liability of Victoria Blackburn.

In ruling on professional fees as an administrative expense claim, Debtors request that the Court specify the specific amounts that Debtors sought in their fee petition. Prior to Debtors' conversion from Chapter 13 to Chapter 7, Debtors' attorneys, Myler, Ruddy & McTavish, and Debtors' valuation expert, James D. Keith, sought compensation for post-petition services in

their representation of Debtors in their adversary trial and priority cost of administrative claim, pursuant to 11 U.S.C. §§ 330, 503, 507. Keith's application for compensation, dated May 11, 2009, sought $6760.00 in fees and $142.90 in expenses. Debtors' counsel's application for compensation, dated May 11, 2009, sought $18765.00 in fees and $2535.89 in expenses.

Section 329(b) of the Bankruptcy Code effectively allows the Court to determine whether the fees charged by the debtor's attorney are excessive and, if so, the Court may cancel any compensation agreement between the attorney and the client. See In re Mortakis, No. 08 B 14401, 2009 WL 1144005, at *3 (Bankr. N.D. Ill. Apr. 29, 2009) (citing In re Wiredyne, Inc., 3 F.3d 1125, 1127 (7th Cir. 1993)). Section 329(a) requires a debtor's attorney to "file with the court a statement of the compensation paid or agreed to be paid . . . and the source of such compensation." Id. (quoting 11 U.S.C. § 329(a)). Bankruptcy courts have wide discretion to determine reasonable compensation for actual and necessary services. In re Wildman, 72 B.R. 700, 705 (Bankr. N.D. Ill. 1987).

Section 330(a)(1) provides:

(a)(1) After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to . . . a professional person employed under section 327 or 1103--
    (A) reasonable compensation for actual, necessary services rendered by the . . . professional person, or attorney and by any paraprofessional person employed by any such person; and
    (B) reimbursement for actual, necessary expenses.

11 U.S.C. § 330(a) (2006). Thus, pursuant to 11 U.S.C. § 330(a)(3), courts should consider six factors to determine whether or not to award attorney fees. Section 330 states, in relevant part:

(a)(3) In determining the amount of reasonable compensation to be awarded to . . . [a] professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –
(A) the time spent on such services;
(B) the rates charged for such services;
(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

>   (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
>   (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
>   (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3)(A)-(F). The plain language of § 330(a)(4)(B) allows compensation for services that benefit the debtor. In re Lee, 209 B.R. 708, 710 (Bankr. N.D. Ill. 1997). It also allows the court to consider the six factors in § 330(a)(3).

"Once a question has been raised about the reasonableness of the attorney's fee under [§] 329, it is the attorney himself who bears the burden of establishing that the fee is reasonable." In re Geraci, 138 F.3d 314, 318 (7th Cir. 1998); see also In re Wildman, supra, 72 B.R. 700 at 708. The legislative history for § 329 states that "[p]ayments to a debtor's attorney provide serious potential for evasion of creditor protection provisions of the bankruptcy laws, and serious potential for overreaching by the debtor's attorney, and should be subject to careful scrutiny." In re Mortakis, No. 08 B 14401, slip op. at *6 (Bankr. N.D. Ill. April 29, 2009) (quoting H.R. REP. NO. 95-595, at 329 (1977), as reprinted in 1978 U.S.C.C.A.N. 5787, 6285) (emphasis supplied).

Section 329(a) requires a debtor's attorney to "file with the court a statement of the compensation paid or agreed to be paid . . . and the source of such compensation." 11 U.S.C. § 329(a). Fee disclosure under § 329 and the Rules is mandatory, not permissive. In re Mortakis, supra, No. 08 B 14401, slip op. at *6 (citing In re Whaley, 282 B.R. 38, 41 (Bankr. M.D. Fla. 2002)). Failure to disclose is sanctionable and can include partial or total denial of compensation, as well as partial or total disgorgement of fees already paid. See In re Prod. Assocs., Ltd., 264 B.R. 180, 186, 189 (Bankr. N.D. Ill. 2001).

Under the Federal Rules of Bankruptcy Procedure 2016, to establish actual and necessary services when an applicant files an application for compensation, an applicant shall submit a

detailed statement of the services rendered, time expended and expenses incurred as well as the amounts requested. In re Wildman, supra, 72 B.R. at 707 (citing Fed. R. Bankr. P. 2016). The detailed statement establishes the "actual" requirement, while an accompanying narrative explanation of the "how" and "why" establishes the "necessary" requirement. Id.

In addition, Local Bankruptcy Rule 5082-2 and General Order 07-02 identify the requirements for the contents of an application for compensation made by a professional, including a debtor's attorney, under a Chapter 13 case. Bankr. N.D. Ill. R. 5082-2; Bankr. N.D. Ill. Gen. Order 07-02. If a debtor's counsel and debtor enter into a Model Retention Agreement, then counsel may apply for a flat fee not to exceed $3500. Bankr. N.D. Ill. R. 5082-2. If the debtor's counsel and debtor have not entered into a Model Retention Agreement, then counsel must include a completed form itemization with the fee application. Id.

Section 503 of the Bankruptcy Code provides for the "allowance" of administrative expenses and derives its importance from section 507. 4 COLLIER, ¶ 503.01. Section 507 provides that certain categories of expenses and claims have priority in the distribution of the assets of the estate. Id. Specifically, section 507(a)(2) sets forth second priority for administrative expenses allowed under section 503(b). Id. Thus, section 503(b)(2) provides:

> (b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including--
> . . . .
> (2) compensation and reimbursement awarded under section 330(a) of this title[.]

11 U.S.C. § 503(b)(2). Section 507(a)(2) then provides:

> (a) The following expenses and claims have priority in the following order:
> . . . .
> (2) Second, administrative expenses allowed under section 503(b) of this title, and any fees and charges assessed against the estate under chapter 123 of title 28.

11 U.S.C. § 507(a)(2) (2006).

In a Chapter 13 case, section 330(a)(4)(B) provides that the court may allow reasonable compensation to the debtor's attorney for representing the interests of the debtor in connection with the bankruptcy case. 11 U.S.C. § 330(a)(4)(B); see also In re Met-L-Wood Corp., 103 B.R. 972, 975 (Bankr. N.D. Ill. 1989). In addition, section 331, in conjunction with Bankruptcy Rule 2016, allows any professional person employed pursuant to § 327 or § 1103 of the Code, to apply to the court for interim compensation and reimbursement. In re Met-L-Wood Corp., 103 B.R. at 975-76 (citing 11 U.S.C. § 331). Moreover, the allowance of a claim for reasonable compensation to the debtor's attorney is an administrative expense, entitled to priority distribution under 11 U.S.C. § 507. See id. at 976. To determine whether to approve an interim compensation application, the court must weigh important competing interests. Id. For instance, the primary policy behind the awarding of interim compensation under § 331 is to relieve attorneys from the burden of financing lengthy and complex bankruptcy proceedings. Id. (citing In re UNR Indus., Inc., 72 B.R. 796, 798-99 (N.D. Ill. 1987) (Chapter 11)). On the other hand, the court must also weigh the interests of preserving the estate and protecting its various classes of creditors. Id. (citing In re Tri-County Water Ass'n, Inc., 91 B.R. 547, 549 (D.S.D. 1988)). It is well-settled that a debtor's attorney is not entitled to compensation from the estate unless his services benefitted the estate. Id. (citing In re Ryan, 82 B.R. 929 (N.D. Ill. 1987)).

Debtor's attorneys and valuation experts defended Debtors in a four-day adversary trial that represented one of the largest claims in Debtors' estate. The Court, sua sponte, determines that Debtors' counsel's and valuation expert's request for administrative priority on their individual applications for compensation requires the requisite notice and hearing, pursuant to 11 U.S.C. § 503(b)(2). Thus, the Court's June 11, 2009 order granting administrative expense claim priority to these applications shall be vacated. In light of the Chapter 7 trustee's July 25, 2009 no asset report, there may not be any assets to distribute for these professional fees. Regardless, the

Court will notice the parties-in-interest and set both professional fee applications for hearing on September 18, 2009.

## CONCLUSION

For the foregoing reasons, upon reconsideration of the Court's June 11, 2009 order and memorandum, the Court sustains Plaintiffs' objections to discharge under § 523(a)(6) in Count IV, and overrules Plaintiffs' objections to discharge under § 523(a)(6) in Count I. Plaintiffs' compensatory damages remain $385,638.04. Debtors' request to reconsider the liability of Victoria Blackburn is denied.

In addition, the Court's June 11, 2009 order granting administrative expense claim priority to Debtors' counsel's and valuation expert's applications for compensation shall be vacated. Debtors' counsel's and valuation expert's request for administrative priority on their individual applications for compensation requires the requisite notice and hearing, pursuant to 11 U.S.C. § 503(b)(2). Accordingly, the Court will notice the parties-in-interest and set both professional fee applications for hearing on September 18, 2009.

THEREFORE, IT IS ORDERED that the foregoing constitutes findings of fact and conclusions of law as required by Fed. R. Civ. P. 52(a) and Fed. R. Bankr. P. 7052. A separate order shall be entered pursuant to Fed. R. Bankr. P. 9021 giving effect to the determinations reached herein.

DATE: September 3, 2009

The Honorable Manuel Barbosa
United States Bankruptcy Judge